**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRADLEY BURGESS,                     :     Civil No. 3:19-cv-1731
                                     :
                    Petitioner       :              (Judge Mariani)
                                     :
            v.                       :
                                     :
BERNADETTE MASON,                    :
                                     :
                    Respondent       :

## MEMORANDUM

## I.   Background

Petitioner Bradley Burgess ("Burgess") files the instant petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254, seeking relief from the Judgment of Sentence entered

on January 22, 2016, in Court of Common Pleas of Luzerne County criminal case CP-40-

CR-0003452-2014, following convictions for twenty-seven counts of drug charges and

related offenses.   (Doc. 1).

For the reasons set forth below, the petition for writ of habeas corpus, which is

governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132,

110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

## II.  State Court Factual and Procedural Background

The following relevant facts and procedural history set forth below are extracted from

the Superior Court of Pennsylvania's January 25, 2017 decision affirming Petitioner's

conviction:

On November 19, 2014, the Luzerne County District Attorney filed a Criminal Information charging [Appellant] with possession of heroin with intent to deliver and DUI stemming from an August 20, 2014 traffic stop of a vehicle driven by [Appellant]. [Appellant] filed a counseled pre-trial motion to suppress statements made by [Appellant] and physical evidence seized.

A suppression hearing was held on July 18, 2015. The Commonwealth presented the testimony of Wilkes-Barre Police Officer David Balchun and introduced [Appellant's] driving record and two lab reports into evidence. Officer Balchun testified that on August 20. 2014, he observed a vehicle make a right hand turn from North Empire Court Street onto Coal Street without using its turn signal.   Additionally, Officer Balchun testified that he smelled a strong odor of marijuana smoke coming from the vehicle. Officer Balchun initiated a traffic stop of the vehicle, and when he approached the driver's side door the odor of marijuana got stronger.   Officer Balchun observed [Appellant] in the driver's seat, and asked him for his license and registration information, which [Appellant] provided.   Officer Balchun then asked [Appellant] if he had any marijuana in the vehicle because he could smell a strong odor of marijuana coming from it.   Officer Balchun testified that [Appellant] responded that he had a little marijuana in his vehicle and then handed the officer a cigar wrapper with a small baggie of marijuana inside it.   After being handed the marijuana, Officer Balchun advised [Appellant] that he was going to search [Appellant's] vehicle for any other narcotics.   Before the search could be conducted, however, [Appellant] fled in the vehicle.   Officer Balchun pursued [Appellant] with his lights and siren activated, but [Appellant] refused to stop and instead ran several stop signs at a high rate of speed, travelled the wrong way down a one way street, and nearly hit a pedestrian.   While pursuing [Appellant], Officer Balchun observed him throw several objects out the vehicle's window. [Appellant] was eventually apprehended and placed into custody after he pulled his vehicle into a driveway and jumped out while the vehicle was still rolling. When Officer Balchun returned to the area where he had observed [Appellant] throw the items out since the officer found bundles of packaged heroin, totaling 250 packets.   Based on [Appellant's] careless and reckless driving, and a statement he made after being taken into custody that the had smoked marijuana prior to being pulled over by *Officer* Balchun, [Appellant] was taken for blood work.   He tested positive for marijuana.   Officer Balchun also testified that as a result of his check on [Appellant's] driver's license, he learned that the license was suspended.   At the conclusion of the suppression hearing, the Court denied [Appellant's] suppression motion.

An Amended Information was subsequently filed setting forth twenty-nine (29) counts against [Appellant] relating to the events of August 20, 2014. Following a September 16, 2015 jury trial, [Appellant] was found guilty of twenty-seven (27) of the twenty-nine (29) counts.   A Pre-Sentence Investigation (PSI) was ordered to be completed by the Luzerne County Adult Probation and Parole Department, and sentencing was scheduled for November 23, 2015.   [Appellant] failed to appear on that date, however, and sentencing was continued until January 22, 2016.

Following review and consideration of the recommendations of counsel and review of the PSI, [the trial court] sentenced [Appellant] to an aggregate term of incarceration of seven and one half (7½ ) to fifteen (15) years in a state correctional institution. (Trial Ct. Op., filed 6/30/16, at 1-3).

Appellant, still represented by the Public Defender's Officer, filed a Motion for Modification of Sentence on January 28, 2016.   Before the trial court ruled on the Motion, Appellant retained private counsel, who filed a Notice of Appeal with this Court on February 22, 2016.   On March 1, 2016, the trial court denied Appellant's Post-Sentence Motion.

Appellant raises five issues on appeal.

1. Whether the trial court erred in ruling that there was probable cause to initiate a lawful traffic stop of the vehicle that was being driven by the Appellant?
2. Whether the trial court erred in ruling that the statements made by the Appellant during the traffic stop were admissible at trial, given that they were the result of a custodial interrogation in which the Appellant was not read his Miranda rights?
3. Whether the trial court erred in ruling that the items of purported marijuana and heroin that were seized from the Appellant and taken into evidence were admissible at trial, given that they were fruits of inadmissible statements given by the Appellant to Officer Balchun?
4. Whether the Appellant was provided with effective assistance of counsel throughout the duration of his case?
5. Whether the sentence imposed by the Honorable Judge David W. Lupas of the Luzerne County Court of Common Pleas on January 22, 2016, was too excessive, given that a lesser sentence would not deprecate the seriousness of the offenses and it would still adequately punish the Appellant.

(Doc. 9-3 at 73, *Commonwealth v. Burgess*, 366 MDA 2016 at 1-3 (Pa. Super. Jan. 25,

2017) (unpublished memorandum).   On January 25, 2017, the Superior Court affirmed

Appellant's judgment of sentence.   *Id*.

On May 15, 2017, Burgess filed a timely petition pursuant to the Post Conviction

Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   (Doc. 9-4 at 2).

The remainder of procedural history is extracted from the Superior Court of

Pennsylvania's April 9, 2019 decision affirming the PCRA Court's order denying Burgess'

PCRA petition:

> [Appellant] appeals from the order denying his petition filed pursuant to the Post
> Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   In this appeal,
> Appellant's court-appointed counsel (PCRA Counsel) filed a petition to
> withdraw as counsel and a no-merit letter pursuant to **Commonwealth v.
> Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d
> 213 (Pa. Super. 1988) (*en banc*).   Because we conclude that PCRA Counsel
> fulfilled the procedural requirements of **Turner/Finley**, and this appeal is
> without merit, we affirm the PCRA court's order denying Appellant's PCRA
> petition and grant PCRA Counsel's petition to withdraw.

*****

> The PCRA Court summarized the subsequent procedural history pertinent to
> this appeal as follows:

> > [Appellant] filed a *pro se* [PCRA petition] on May 15, 2017, and we
> > entered an Order on March 29, 2018, which *inter alia*, appointed counsel
> > to represent [Appellant] relative to the instant matter and directed said
> > counsel to determine the necessity for the filing of any supplement to
> > [Appellant]'s *pro se* [petition].

> > On May 29, 2018, a hearing was held on [Appellant's petition], when
> > testimony and evidence was presented by [Appellant] for the Court's

consideration.   We denied [Appellant's PCRA petition] on the record at the conclusion of the PCRA hearing at which time he was also advised of his appellate rights.   ([N.T., 5/29/18, at 18-19).]

[Appellant] filed a timely Notice of Appeal on June 11, 2018 and, following the appointment of appellate counsel, filed a Statement of Matters Complained of on Appeal on July 5, 2018. The Commonwealth filed a response thereto on July 17, 2018.

\*\*\*\*\*

In Appellant's first issue, as raised in the **Turner/Finley** no-merit letter, he asserts that the PCRA court erred in dismissing his claim that trial counsel was ineffective for failing to object to hearsay testimony from Officer Balchun regarding "what a victim told him in furtherance of his investigation." **Turner/Finley** Letter at 5.

\*\*\*\*\*

In Appellant's second issue, as raised in the **Turner/Finley** no-merit letter, Appellant argues that trial counsel was ineffective in his cross-examination of Officer Balchun.   Appellant asserts that trial counsel was ineffective because he did not question Officer Balchun about the inconsistent statements he made regarding the route he used in pursuit of Appellant.

\*\*\*\*\*

Finally, in his *pro se* response to Counsel's **Turner/Finley** Letter, Appellant argues that his constitutional rights were violated because "the Commonwealth failed to provide the defendant with formal and specific notice for the charges: (1) fleeing and eluding, (2) possession of a small amount of marijuana, (3) recklessly endangering another person, (4) flight to avoid apprehension, and (5) resisting arrest and summary offenses."   Response to **Turner/Finley** Letter at 1. Appellant maintains that he is entitled to a new trial.

(Doc. 9-4 at 73, *Commonwealth v. Burgess*, 982 MDA 2018 at 1-4 (Pa. Super. April 9, 2019)

(unpublished memorandum).   The Pennsylvania Superior Court agreed with the PCRA

Court and PCRA Counsel that there were no meritorious issues that Appellant could pursue

on collateral review, and affirmed the order dismissing the PCRA petition.   *Id.*

Thereafter, on October 4, 2019, Burgess filed the instant timely petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.   In his petition, Burgess raises the single

claim that counsel was ineffective for "failing to impeach Officer David Balchun with his prior

inconsistent statement; and the State Court's rejection of this claim was based on an

unreasonable determination of the facts in light of the evidence presented."   (Doc. 2,

Memorandum of Law).   On December 10, 2019, Petitioner filed a supplement to his original

petition, adding the ground that "Trial Counsel was ineffective for failing to object (in part) to

the testimony of Officer David Balchun when he testified to the results of Petitioner's blood

sample where the drawing of Petitioner's blood was non-consensual/involuntary and in

violation of his Fourth Amendment Right."   (Doc. 4).

## III.   Legal Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for

a prisoner to challenge the "fact or duration" of his confinement.   *Preiser v. Rodriguez*, 411

U.S. 475, 498-99 (1973).   28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court
> shall entertain an application for a writ of habeas corpus in behalf of a person
> in custody pursuant to the judgment of a State court only on the ground that
> he is in custody in violation of the Constitution or laws or treaties of the United
> States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.   Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).   A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   This limitation places a high threshold on the courts.   Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."   *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citations omitted).

Burgess' case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV.    Discussion

### A. Exhaustion and Procedural Default

Before considering the merits of Burgess' grounds for relief, the Court must address Respondent's contention that one of the claims raised is unexhausted and procedurally defaulted.   Specifically, Respondent asserts that Petitioner's second ground, raised in his supplement is unexhausted and procedurally defaulted.   (Doc. 9 at 12-14).

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).   Specifically, habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).   The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.   *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).   The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court.   *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims

before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).   This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts.   *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts).   Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent.   *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976).   Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts.   *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'   28 U.S.C. § 2254(b).   In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.   *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."

*McCandless*, 172 F.3d at 260.   To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.   *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.   *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).   The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.   *Bousley v. United States*, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496.   A petitioner establishes actual innocence by asserting "new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.   *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).   We will address Respondent's argument concerning the exhaustion and procedural default of Petitioner's second claim.

It is Respondent's position that Petitioner's argument that "trial counsel was ineffective for failing to object to the testimony of Officer David Balchun when he testified to the results of Petitioner's blood sample where the drawing of Petitioner's blood was non-consensual/involuntary and in violation of his Fourth Amendment Right", has never been presented to a state court, and, consequently, is procedurally defaulted.   (Doc. 9 at 12-14). Petitioner argues that he can overcome the procedural default of this claim under the authority of *Martinez v. Ryan*, 566 U.S. 1 (2010), claiming that his PCRA counsel was ineffective because he failed to raise trial counsel's ineffectiveness for not challenging his blood alcohol concentration results pursuant to *Missouri v. McNeely*, 569 U.S. 141 (2013) and *Birchfield v. North Dakota,* 136 S.Ct. 2160, 2186 (2016).   *Id.*

*Martinez v. Ryan*, 566 U.S. 1 (2010), recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default.   Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."   *Id.* at   9.   To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.   *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *see also Martinez*, 566 U.S. at 13-14. A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the *Strickland v. Washington*, 466 U.S. 668 (1984) standard. *See Preston v. Sup't Graterford, SCI*, 902 F.3d 365, 376 (3d Cir. 2018); *see also Workman*, 915 F.3d at 937–38. Satisfaction of the first *Strickland* prong requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688.

Initially, Petitioner argues that trial counsel was ineffective for failing to object to the testimony of Officer David Balchun, regarding Petitioner's blood sample, which Plaintiff concludes was drawn without a warrant, in violation of *Missouri v. McNeely*, 569 U.S. 141 (2013). (Doc. 4 at 1). Plaintiff states that *McNeely* stands for the proposition that "officers should get warrants for blood-draws." *Id.*

*McNeely*, however, involved the warrantless taking of a blood sample over an individual's refusal, holding that the natural metabolization of alcohol in the bloodstream

does not present a per se exigency that justifies a warrantless search.   569 U.S. at 152-53.

In fact, *McNeely* recognized, with approval, that states may, and do, utilize implied consent

statutes to obtain driver's blood without a warrant.   *McNeely* at 16-61.   Because this case

did not implicate the validity of consent for a blood test given under threat of criminal

penalties, as Petitioner suggests, the Court finds that the underlying, otherwise defaulted,

claim of ineffective assistance of trial counsel lacks merit, and *Martinez* does not excuse this

procedural default.

Petitioner next raises the same argument under *Birchfield v. North Dakota,* 136 S.Ct.

2160, 2186 (2016), claiming that his "blood draw was non-consensual and warrantless; in

fact, it was given out of fear of him facing criminal penalties for not given consent."   (Doc. 4

at 4).   Specifically, Petitioner states that he was "given a standard DL-26 form which is

used to obtain consent for blood drawing when suspected for driving under the influence"

and that the "DL-26 form clearly threatens to enhance criminal penalties for refusing to

submit to chemical testing which renders submission non-consensual/involuntary because it

goes against the free-will of the individual who, under the fear of facing a criminal sanction,

signs the form." *Id*.

On June 23, 2016, the Supreme Court decided *Birchfield v. North Dakota*, which

held for the first time that motorists suspected of driving under the influence cannot be

deemed to have validly consented to submit to a blood test when the consent is provided on

pain of prosecution for a criminal offense.   136 S. Ct. 2160, 2186 (2016).   Thus, on the

date Burgess' blood was drawn (almost two years before *Birchfield* was decided), the

Supreme Court had not squarely addressed the constitutionality of Officer Balchun's

particular conduct—that is, obtaining consent for a blood draw by subjecting motorists to

criminal penalties if they refuse.

     The same is true under Pennsylvania law.   *Commonwealth v. Updike*, decided in

the wake of *Birchfield*, on October 13, 2017 (three years after Burgess' blood draw), was the

first appellate case in Pennsylvania that invalidated the criminal prosecution provision of the

DL-26 form.   172 A.3d 621 (Pa. Superior Ct. 2017).   In *Updike*, a motorist suspected of

driving under the influence was presented with the DL-26 form, and the motorist consented

to a blood draw based on the threat of criminal penalties.   *Id.* at 623.   The motorist was

charged with driving under the influence.   *Id.*   While the motorist's case was pending, the

Supreme Court decided *Birchfield.*   *Id.* at 624.   The motorist moved to suppress the blood

draw evidence, arguing that it was collected in violation of the Fourth Amendment.   *Id.*

The Pennsylvania Superior Court concluded that the criminal prosecution provision of the

DL-26 form was invalid in light of *Birchfield*; however, the blood draw evidence in this

motorist's case fit within the good-faith exception to the exclusionary rule because it

occurred before *Birchfield* was decided.   *Id.* at 624.   The Superior Court stated, "When

[the motorist] was arrested and gave consent to the blood draw, the warnings regarding

increased criminal penalties for refusing a blood draw (included in form DL-26) were legally

correct."   *Id.*   As the *Updike* court held:

> At the time of [the motorist's] arrest, police were required to read [the motorist]
> the warnings contained in the DL-26 form which this Court and our Supreme
> Court had consistently upheld as constitutional. Police officers in Pennsylvania
> had no reason to believe that the Supreme Court of the United States would
> render the statute at issue unconstitutional in *Birchfield.*

*Id.* at 627 (internal citations omitted).

This same situation is present in Burgess' case. Counsel cannot be faulted for not

predicting or anticipating a change in the law. *U.S. v. Davies*, 394 F.3d 182 (3d Cir. 2005);

*Commonwealth v. Bennett*, 57 A.3d 1185 (Pa. 2012). Nor has Burgess directed the Court

to any precedent, from any court, prior to his 2014 arrest and 2015 trial, stating that using

the DL-26 form, or otherwise obtaining consent for a blood draw on pain of additional

criminal charges, violates the Fourth Amendment. Consequently, counsel cannot be

deemed ineffective for failing to pursue a meritless claim. Because the underlying,

otherwise defaulted, ineffective assistance of counsel claim does not meet the "some merit"

threshold, *Martinez* is unavailable to excuse Burgess' procedural default of this claim.

### B. Claim Adjudicated on the Merits

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of

habeas corpus may not grant relief "with respect to any claim that was adjudicated on the

merits in State court proceedings" unless the claim (1) "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or (2) "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."   *Cullen*, 563 U.S. at 181 (internal quotation marks and citation omitted).   The burden is on Burgess to prove entitlement to the writ.   *Id*.

Under 28 U.S.C. § 2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."   *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)).   "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous."   Lockyer v.

Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted).   "Under § 2254(d)(1)'s

'unreasonable application' clause ... a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."   *Id.* at 75–76

(quoting *Williams*, 529 U.S. at 411).   Rather, "[t]he state court's application of clearly

established law must be objectively unreasonable" before a federal court may grant the writ.

*Andrade*, 538 U.S. at 75.

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether

the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the

state court's determination of the facts was unreasonable in light of the record.   *See Rice v.

Collins*, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are

presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and

convincing evidence.' ") (quoting § 2254(e)(1)) (citing *Miller–El v. Dretke*, 545 U.S. 231, 240,

(2005)).   Importantly, the evidence against which a federal court measures the

reasonableness of the state court's factual findings is the record evidence at the time of the

state court's adjudication.   *Cullen*, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court,

a determination of a factual issue shall be presumed to be correct.   The applicant shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

Petitioner's remaining claim that trial counsel was ineffective for failing to impeach Officer David Balchun with the prior inconsistent statements he allegedly made regarding the route of the chase, has been fully adjudicated on the merits during the state court proceedings.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.   First, the petitioner must show that counsel's performance was deficient.   This requires showing that "counsel's representation fell below an objective standard of reasonableness."   *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance.   "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *See id*. at 694.   The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong.   *See Strickland*, 466 U.S. at 687*; Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987).   As a

result, if a petitioner fails on either prong, he loses.   *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law' " for purposes of the AEDPA.   *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)).   Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts.   *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005).   Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

The Pennsylvania Superior Court affirmed the PCRA Court's rejection of this claim, finding the following:

> In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. **Commonwealth v.**

**Bomar**, 104 A.3d 1179, 1188 (Pa. 2014).   To overcome that presumption, the petitioner must establish:   "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different."   **Id**. (citation omitted).   To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   **Commonwealth v. King**, 57 A.3d 607, 613 (Pa. 2012).   If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. **Bomar**, 104 A.3d at 1188.

*****

In Appellant's second issue, as raised in the **Turner/Finley** no-merit letter, Appellant argues that trial counsel was ineffective in his cross-examination of Officer Balchun.   Appellant asserts that trial counsel was ineffective because he did not question Officer Balchun about the inconsistent statements he made regarding the route he used in his pursuit of Appellant.

We conclude that this issue also lacks arguable merit.   The transcript of Appellant's PCRA hearing reflects that Appellant was unable to specify what inconsistent statements, if any, Officer Balchun made during his trial testimony relating to the route he used to pursue Appellant.   **See id**. at 7-13. Appellant also failed to explain how these allegedly inconsistent statements prejudiced him at trial.   Appellant's second issue amounts to nothing more than a bald assertion of ineffectiveness.   Thus, the PCRA court did not abuse its discretion in concluding that this claim lacks merit.

(Doc. 9-4 at 78-80, *Commonwealth v. Burgess*, 982 MDA 2018 at 1-4 (Pa. Super. April 9,

2019) (unpublished memorandum).

Upon review of the record, the Court concludes that Petitioner has failed to

demonstrate that the state court's disposition of this claim was contrary to, or was an

unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner

has not demonstrated that the state court's determination of the facts was unreasonable.

As is apparent from the transcript of Petitioner's PCRA hearing, Petitioner never fully

formulated his argument in support of counsel's alleged ineffectiveness with regard to

impeaching Officer David Balchun's alleged prior inconsistent statements regarding the

route of the chase.   (*See* Doc. 9-4 at 7-14).   As such, Petitioner cannot show that he was

prejudiced in any way.   Accordingly, Petitioner is not entitled to relief on this claim.

## V.    <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate

of appealability ("COA"), an appeal may not be taken from a final order in a proceeding

under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).   "A petitioner

satisfies this standard by demonstrating that jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further."   *Miller-El v.*

*Cockrell*, 537 U.S. 322 (2003).   Burgess fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Burgess from appealing

the order denying his petition so long as he seeks, and obtains, a certificate of appealability

from the Third Circuit Court of Appeals.   *See* FED. R. APP. P. 22(b)(1).

## VI.     **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 will be denied.

A separate Order shall issue.


Dated: September ___4___, 2020

Robert D. Mariani
United States District Judge